UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: ____________________

| | |
|---|---|
| ALICIA MONTOYA, | ) |
| Plaintiff, | ) |
| v. | ) |
| LENNAR MORTGAGE, LLC, | ) |
| Defendant. | ) |

COMPLAINT

Plaintiff, Alicia Montoya ("Plaintiff" or "Ms. Montoya"), by and through the undersigned counsel, hereby files this Complaint against Defendant Lennar Mortgage, LLC ("Defendant" or "Lennar Mortgage"), and alleges as follows:

**NATURE OF THE ACTION**

This is a civil action for damages, declaratory relief, injunctive relief, and all other appropriate remedies arising from Defendant's unlawful employment practices in violation of federal and Florida law. Plaintiff brings this action pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq. ("FCRA").

Plaintiff seeks redress for Defendant's discriminatory and retaliatory conduct, including disability discrimination by disparate treatment and Defendant's refusal to allow Plaintiff to work because of her disability and her use of a cane, and retaliation for engaging in protected activity when she opposed Defendant's disability-based refusal to hire her and sought the opportunity to perform her job with or without a reasonable accommodation.

Defendant's actions, including turning Plaintiff away on the day she reported to work as a Notary Officer/Loan Closer upon observing that she uses a cane, telling her that she was "a liability to the company," and refusing to allow her to begin work or to demonstrate her ability to perform the essential functions of the position, constitute unlawful disability discrimination and retaliation under the ADA and the FCRA.

Plaintiff seeks all relief available under the ADA and the FCRA, including back pay, front pay or instatement, compensatory and punitive damages, emotional distress damages, declaratory and injunctive relief, prejudgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## PARTIES

1. At all times material, Plaintiff Alicia Montoya is an adult female and a resident of Broward County, Florida, within the jurisdiction of this Honorable Court.

2. At all times material, Plaintiff was a qualified individual with a disability, and was regarded by Defendant as having a disability, in that she has a permanent physical impairment since 2021 that affects her mobility and requires her to walk with a cane, substantially limiting the major life activity of walking.

3. At all times material, Plaintiff was an applicant, prospective employee, and/or newly hired employee for the Notary Officer/Loan Closer position, and therefore she was a "person," an "aggrieved person," and an individual protected from discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act, Fla. Stat. § 760.02.

4. Defendant Lennar Mortgage, LLC is a Florida limited liability company with its principal place of business at 5505 Waterford District Drive, Suite 502, Miami, Florida 33126. At all times relevant, Lennar Mortgage was engaged in business in Miami-Dade County, Florida.

5. At all times pertinent hereto, Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year and is an “employer” within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FCRA, Fla. Stat. § 760.02.

6. At all times material, Esmeralda Urrego was employed by Defendant and acted as Defendant’s agent and Plaintiff’s prospective supervisor with respect to the recruitment, hiring, and work assignment of Plaintiff. Esmeralda Urrego acted within the course and scope of her authority and in furtherance of Defendant’s business, and Defendant is liable for her conduct.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117, because this action arises under the laws of the United States prohibiting discrimination and retaliation in employment, including the ADA.

8. This Court has supplemental jurisdiction over Plaintiff’s related state law claims pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff’s state law claims share all common operative facts with her federal law claims, the parties are identical, and resolving both sets of claims in one action promotes judicial economy, efficiency, and fairness to the parties.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in and maintains its principal place of business within this judicial district, and because the acts and omissions giving rise to these claims occurred in whole or in part in Miami-Dade County,

Florida, where Plaintiff reported to work and where Defendant conducted business with respect to this matter.

## CONDITIONS PRECEDENT

10. Plaintiff has complied with all conditions precedent to bringing this action, to wit:

a. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, Miami District Office, Charge No. 510-2025-12930, which was digitally signed and filed on September 19, 2025, and which was dual filed with the Florida Commission on Human Relations under Fla. Stat. § 760.10;

b. In her Charge, Plaintiff asked the EEOC and the Florida Commission on Human Relations to investigate her claims of discrimination based on disability and retaliation, in violation of the Americans with Disabilities Act, as amended;

c. More than 180 days have passed since the filing of Plaintiff's Charge of Discrimination;

d. On June 23, 2026, the EEOC issued its Dismissal and Notice of Right to Sue on Charge No. 510-2025-12930, authorizing Plaintiff to commence a civil action; and

e. This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

11. Any other applicable conditions precedent to bringing this action have occurred, been performed, or been excused before the filing of this lawsuit.

12. Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected and has become obligated to pay the undersigned a reasonable attorney's fee.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiff Alicia Montoya is an experienced loan signing professional whose work involves closing loans and notarizing documents for mortgage loan packages.

14. Since 2021, Plaintiff has walked with a cane as a result of permanent physical impairment. The cane is a mobility aid that assists Plaintiff with the major life activity of walking. Plaintiff remains fully able to read, write, speak, walk, carry items, notarize documents, and perform the duties of a Notary Officer/Loan Closer.

15. In 2023, Esmeralda Urrego, acting on behalf of Defendant Lennar Mortgage, contacted Plaintiff by telephone about an employment opportunity with Defendant, explaining that the company was very busy and looking to hire employees.

16. Plaintiff, who was interested in the opportunity, traveled to Defendant's office. Once there, Ms. Urrego introduced Plaintiff to approximately four employees in the lobby, asked one of them to obtain a badge for Plaintiff, and directed that Plaintiff be given a tour of the workplace.

17. During the tour, Plaintiff was shown the specific office where she would be working, the break room, the printer and fax area, the customer service department, and other areas of the workplace. Plaintiff reasonably understood from this interaction that she was being considered for the position and would be working for Defendant.

18. During this visit, Plaintiff candidly informed Ms. Urrego that she might undergo surgery within the following weeks and that she would provide advance notice. Shortly after Plaintiff disclosed her anticipated surgery, Ms. Urrego told Plaintiff that she could not be hired and that they might reconnect in the future.

19. Approximately one year later, in November 2024, Ms. Urrego again contacted Plaintiff by telephone on behalf of Defendant and asked whether Plaintiff wanted to work for the company. Ms. Urrego explained that Defendant had a high volume of clients and needed employees to assist with closing loans and notarizing loan documents. Plaintiff accepted the opportunity.

20. On November 26, 2024, Ms. Urrego contacted Plaintiff, explained that the company had a high volume of closings, offered Plaintiff the opportunity to start working for Lennar closing loans and notarizing documents for mortgage loan packages. Urrego explained that Lennar had 371 closings and that Ms. Montoya could start the following day. Plaintiff accepted and was instructed to report to Defendant's office to begin work.

21. On November 26, 2024, Plaintiff understood that she would be paid approximately $3,250 per week, that her work schedule would be Monday through Friday, 9:00 a.m. to 5:00 p.m., and that she would perform her job duties and responsibilities from her own assigned office, at Defendant's office located at 5505 Waterford District Drive, Miami, Florida ("Defendant's Office").

22. Plaintiff further understood that Esmeralda Urrego would be her supervisor, that Defendant would control and assign the loan-closing work she was to perform, that she would perform the work through Defendant's systems, equipment, procedures, and client assignments, and that she was expected to perform the assignments given to her rather than independently accept or reject individual closings.

23. On November 27, 2024, Plaintiff reported to Defendant's office, with her pre-packed lunch, prepared and excited to begin her new position as a Notary Officer/Loan Closer.

24. Ms. Urrego came down to the lobby by elevator, greeted Plaintiff, and began walking with her toward the lobby. Ms. Urrego then asked Plaintiff to wait and stepped away. When she returned, Ms. Urrego said to Plaintiff, “You didn’t tell me you walk with a cane. Do you need a cane to walk?”

25. Ms. Urrego then told Plaintiff, “Sorry, but HR said no. We can’t hire you; you can’t work here. You are a liability to the company.” Ms. Urrego additionally stated that Defendant needed someone who could run, carry heavy things, and walk fast, that Defendant had “high-end clients,” and that clients “can trip over your cane.”

26. Plaintiff responded that walking with a cane would not prevent her from performing the duties of a notary, and explained that she could read, write, talk, walk, carry items, notarize documents, and perform the duties required of the position.

27. When Plaintiff asked whether the decision was because of her cane, Ms. Urrego responded that it was not her decision but the company’s, and reiterated that HR had said no. Ms. Urrego again told Plaintiff that she was “a liability to the company.”

28. Running is not, and was not, an essential function of the Notary Officer/Loan Closer position, which required Plaintiff to close loans and notarize mortgage loan documents.

29. Plaintiff was turned away and/or wrongfully terminated on the spot and refused the opportunity to begin work solely because she uses a cane and because of Defendant’s perception of her disability. She was never permitted to perform any work, was never given the opportunity to demonstrate that she could perform the essential functions of the position and was never given the opportunity to present documentation or to request or discuss reasonable accommodation.

30. On November 26, 2024, Defendant recruited Plaintiff, directed her to report to Defendant’s office to begin work, and then on November 27, 2024, Defendant refused to allow

her to begin work, refused to hire her, rescinded the employment opportunity, and/or alternatively terminated her after observing that she used a cane.

31. Defendant did not turn away, refuse to hire, or refuse to allow to work similarly situated notaries and loan closers who did not use a cane and whom Defendant did not perceive as disabled. On information and belief, during the same period in which Defendant refused to allow Plaintiff to work, Defendant continued to recruit, hire, and permit non-disabled individuals who did not use a mobility aid to work in the Notary Officer/Loan Closer positions it was actively filling to handle its high volume of closings. Plaintiff, a qualified individual with a disability, was treated less favorably than these similarly situated non-disabled individuals.

32. Defendant's stated reasons for refusing to allow Plaintiff to work, including that she was "a liability," that clients could "trip over" her cane, and that the position required running, were false and pretextual, and were designed to conceal Defendant's discrimination against Plaintiff because of her disability and its perception of her disability.

33. Defendant subjected Plaintiff to an adverse employment action when, after recruiting her and instructing her to report to work, it refused to allow her to begin work, refused to hire her, rescinded the employment opportunity, and/or alternatively terminated her upon her arrival because of her disability and perceived disability.

34. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, and financial hardship. Plaintiff left Defendant's workplace crying and humiliated and was made to feel as though she was incapable of working simply because she uses a cane.

## COUNT I: DISABILITY DISCRIMINATION
## (Disparate Treatment) - ADA

35. Plaintiff re-adopts and incorporates by reference each and every allegation stated in paragraphs 1 through 34 above as if set out in full herein.

36. At all relevant times, Plaintiff was and is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12101 et seq., in that she has a permanent physical impairment since 2021 that substantially limits the major life activity of walking and requires her to use a cane. Plaintiff also has a record of such impairment and was regarded by Defendant as having a disability.

37. Plaintiff was qualified to perform the essential functions of the Notary Officer/Loan Closer position, which required her to close loans and notarize mortgage loan documents, with or without a reasonable accommodation. Running was not an essential function of the position.

38. Defendant subjected Plaintiff to an adverse employment action because of her disability and its perception of her disability when, on November 27, 2024, upon observing that Plaintiff walks with a cane, Defendant refused to allow Plaintiff to begin work, refused to hire her, and rescinded the employment opportunity for which she had been recruited and had reported to work, with no explanation other than that she was "a liability to the company."

39. Defendant's decision was made upon Ms. Urrego observing Plaintiff's cane, without any assessment of Plaintiff's ability to perform the essential functions of the position and without permitting Plaintiff to perform any work or demonstrate her qualifications.

40. Similarly situated notaries and loan closers who did not use a cane and whom Defendant did not perceive as disabled were not refused the opportunity to work and were hired

to fill the positions Defendant was actively staffing, while Plaintiff, a qualified individual with a disability, was turned away.

41. Plaintiff's disability and Defendant's perception of her disability were motivating factors in, and the but-for cause of, Defendant's decision to refuse to allow Plaintiff to work and to deny her employment.

42. Any legitimate, nondiscriminatory reason proffered by Defendant for its conduct is pretextual. Defendant's stated reasons, that Plaintiff was "a liability," that clients could "trip over" her cane, and that the position required running, are unworthy of belief and were designed to conceal disability-based discriminatory animus.

43. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff sustained emotional suffering, mental anguish, humiliation, and economic injury, including lost wages and benefits.

44. Defendant acted with malice and with reckless indifference to Plaintiff's federally protected rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADA;

b. Issue an order enjoining Defendant to cease and desist from the conduct described in Count I of this Complaint and from discriminating against Plaintiff on the basis of disability in any manner whatsoever;

c. Issue an order requiring Defendant to adopt and disseminate a policy protecting individuals with disabilities from discrimination and establishing reasonable and adequate procedures for engaging in the interactive process and providing reasonable accommodations;

d. Order instatement or reinstatement of Plaintiff to the position she would occupy but for Defendant's unlawful conduct, or award Plaintiff front pay in an amount to be determined at trial if instatement is determined to be impractical;

e. Award Plaintiff back pay and the value of lost employment benefits which would have accrued but for Defendant's unlawful conduct;

f. Award Plaintiff compensatory damages under the ADA for the emotional pain, mental anguish, humiliation, and emotional distress she has suffered and continues to suffer;

g. Award Plaintiff punitive damages;

h. Award Plaintiff prejudgment interest on her damages award;

i. Award Plaintiff reasonable costs and attorneys' fees; and

j. Grant Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT II: DISABILITY DISCRIMINATION**
**(Retaliation) - ADA**

45. Plaintiff re-adopts and incorporates by reference each and every allegation stated in paragraphs 1 through 34 above as if set out in full herein.

46. At all relevant times, Plaintiff was and is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12101 et seq., in that she has a permanent physical impairment since year 2021 that substantially limits the major life activity of walking and requires her to use a cane. Plaintiff also has a record of such impairment and was regarded by Defendant as having a disability.

47. Plaintiff was qualified to perform the essential functions of the Notary Officer/Loan Closer position, which required her to close loans and notarize mortgage loan documents, with or without reasonable accommodation. Running was not an essential function of the position.

48. Plaintiff engaged in protected activity under the ADA when, on November 27, 2024, she opposed Defendant's disability-based refusal to allow her to work by asserting that walking with a cane would not prevent her from performing the duties of the position, by explaining that she was able to perform the essential functions of the job, and by asking whether Defendant's refusal was because of her cane, thereby opposing conduct she reasonably believed

to be unlawful disability discrimination and seeking the opportunity to work with or without a reasonable accommodation.

49. Defendant, and its agent Ms. Urrego, had contemporaneous knowledge of Plaintiff's protected activity because Plaintiff voiced her opposition and her request directly to Ms. Urrego during their in-person encounter.

50. Immediately following and in response to Plaintiff's protected activity, Defendant subjected Plaintiff to a materially adverse employment action by refusing to allow her to begin work, refusing to hire her, and rescinding the employment opportunity, telling her that she was "a liability to the company" and that HR had said no.

51. The immediate temporal proximity between Plaintiff's protected activity and Defendant's adverse action, occurring in the same conversation and on the same day, establishes a direct causal connection between Plaintiff's protected activity and Defendant's retaliatory conduct. Plaintiff would not have been refused the opportunity to work but for her protected activity.

52. Any legitimate, nonretaliatory reason proffered by Defendant for its conduct is pretextual and unworthy of belief.

53. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff sustained emotional suffering, mental anguish, humiliation, and economic injury, including lost wages and benefits.

54. Defendant acted with malice and with reckless indifference to Plaintiff's federally protected rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of the ADA;

b. Issue an order enjoining Defendant to cease and desist from the conduct described in Count II of this Complaint and from retaliating against Plaintiff in any manner whatsoever;

c. Issue an order requiring Defendant to adopt and disseminate a policy protecting employees and applicants from retaliation for exercising rights under the ADA and establishing reasonable and adequate procedures for investigating complaints and taking suitable remedial action;

d. Order instatement or reinstatement of Plaintiff to the position she would occupy but for Defendant's unlawful conduct, or award Plaintiff front pay in an amount to be determined at trial if instatement is determined to be impractical;

e. Award Plaintiff back pay and the value of lost employment benefits which would have accrued but for Defendant's unlawful conduct;

f. Award Plaintiff compensatory damages under the ADA for the emotional pain, mental anguish, humiliation, and emotional distress she has suffered and continues to suffer;

g. Award Plaintiff punitive damages;

h. Award Plaintiff prejudgment interest on her damages award;

i. Award Plaintiff reasonable costs and attorneys' fees; and

j. Grant Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT III: HANDICAP DISCRIMINATION**
**(Disparate Treatment) - FCRA**

55. Plaintiff re-adopts and incorporates by reference each and every allegation stated in paragraphs 1 through 34 above as if set out in full herein.

56. At all times material hereto, Plaintiff was an individual with a handicap within the meaning of the FCRA, in that she has a permanent physical impairment since 2021 that affects her mobility and requires her to use a cane. Defendant was at all times aware of, and regarded Plaintiff as having, such a handicap.

57. At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful

employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

58. Plaintiff was qualified for the Notary Officer/Loan Closer position and was capable of performing its essential functions, which required her to close loans and notarize mortgage loan documents, with or without a reasonable accommodation. Running was not an essential function of the position.

59. During the course of Plaintiff's dealings with Defendant, Plaintiff was subjected to adverse employment action because of her handicap when, on November 27, 2024, upon observing that Plaintiff walks with a cane, Defendant refused to allow Plaintiff to begin work, refused to hire her, and rescinded the employment opportunity for which she had been recruited and had reported to work, telling her she was "a liability to the company," as more fully described in paragraphs 13 through 33 of this Complaint.

60. The discriminatory conduct referred to in paragraphs 13 through 33 of this Complaint is and was offensive to Plaintiff and would be offensive to a reasonable person.

61. Plaintiff was subjected to the conduct referred to in this Complaint because of her handicap. Similarly situated notaries and loan closers who did not use a cane and were not regarded as handicapped were not refused the opportunity to work and were hired to fill the positions Defendant was actively staffing.

62. Any alleged nondiscriminatory reason for this treatment of Plaintiff by Defendant is a mere pretext for the actual reason for discriminating against Plaintiff based on her handicap.

63. Defendant violated the Florida Civil Rights Act by discriminating against Plaintiff because of her handicap with respect to the terms, conditions, and privileges of employment.

64. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

65. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights pursuant to Fla. Stat. § 760.10, and were done wantonly, willfully, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates based on handicap;

d. Order Defendant to make Plaintiff whole by compensating her for lost wages and benefits, including front pay and back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law, including punitive damages and attorneys' fees pursuant to Fla. Stat. § 760.11;

g. Award Plaintiff costs of this action, including reasonable attorneys' fees; and

h. Grant such other and further relief as the Court deems just and proper.

**COUNT IV: HANDICAP DISCRIMINATION**
**(Retaliation) - FCRA**

66. Plaintiff re-adopts and incorporates by reference each and every allegation stated in paragraphs 1 through 34 above as if set out in full herein.

67. At all times material hereto, Plaintiff was an individual with a handicap within the meaning of the FCRA, in that she has a permanent physical impairment since 2021 that affects her mobility and requires her to use a cane. Defendant was at all times aware of, and regarded Plaintiff as having, such a handicap.

68. At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which prohibits an employer from retaliating against an individual for engaging in protected activity, including opposing an unlawful employment practice.

69. Plaintiff engaged in protected activity under the FCRA when, on November 27, 2024, she opposed Defendant's handicap-based refusal to allow her to work by asserting that walking with a cane would not prevent her from performing the duties of the position, by explaining that she was able to perform the essential functions of the job, and by asking whether Defendant's refusal was because of her cane, thereby opposing conduct she reasonably believed to be unlawful handicap discrimination.

70. Defendant, through its agent Ms. Urrego, had contemporaneous knowledge of Plaintiff's protected activity because Plaintiff voiced her opposition directly to Ms. Urrego during their in-person encounter.

71. Immediately following and in response to Plaintiff's protected activity, Defendant subjected Plaintiff to a materially adverse employment action by refusing to allow her to begin work, refusing to hire her, and rescinding the employment opportunity, telling her that she was "a liability to the company" and that HR had said no.

72. The immediate temporal proximity between Plaintiff's protected activity and Defendant's adverse action, occurring in the same conversation and on the same day, establishes

a causal connection between Plaintiff's protected activity and Defendant's retaliatory conduct. Plaintiff would not have been refused the opportunity to work but for her protected activity.

73. The discriminatory and retaliatory conduct referred to in paragraphs 13 through 33 of this Complaint is and was offensive to Plaintiff and would be offensive to a reasonable person.

74. Plaintiff was and is qualified for the position for which she was recruited.

75. Any alleged nonretaliatory reason for this treatment of Plaintiff by Defendant is a mere pretext for the actual reason for retaliating against Plaintiff.

76. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

77. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights pursuant to Fla. Stat. § 760.10, and were done wantonly, willfully, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which retaliates on the basis of protected activity;

d. Order Defendant to make Plaintiff whole by compensating her for lost wages and benefits, including front pay and back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law, including punitive damages and attorneys' fees pursuant to Fla. Stat. § 760.11;

g. Award Plaintiff costs of this action, including reasonable attorneys' fees; and

h. Grant such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury of all issues so triable as of right.

Dated: September 18, 2026.

Respectfully submitted,

**s/ Tanesha W. Blye**
Tanesha Walls Blye, Esq.
Florida Bar No. 738158
Email: attorneyblye@lawyerofjustice.com
THE LAW OFFICE OF T. WALLS BLYE, PLLC
66 West Flagler, Suite 900,
Miami, Florida 33130
15800 Pines Boulevard, Suite 321,
Pembroke Pines, FL 33027
Telephone: (786) 796-1814

***Lead Counsel for Plaintiff***